# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

CASE NO: **02-60652**

ELGIN O. JONES,

      Plaintiff,

vs.

CITY OF FORT LAUDERDALE, a
municipality.

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Elgin O. Jones ("Jones"), sues the Defendant, the City of Fort Lauderdale ("City"), and states as follows:

### NATURE OF ACTION

1.  This is an action for damages in excess of $75,000.00 arising from unlawful employment practices. This action is brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. The Plaintiff's allegations are based upon federal law.

3.  Venue is proper in the Ft. Lauderdale Division of the Southern District of Florida pursuant to 28 U.S.C. §1391(b) because the claims arose here.

## THE PARTIES

4.      The plaintiff, Jones, is a resident of Broward County, Florida and is an employee of the Defendant, the City.  He is a member of the protected class based upon his race, African American and color, black.

5.      The City of Fort Lauderdale ("City") is a Florida municipal corporation located in Broward County, Florida and employs more than 300 persons.

## FACTUAL BACKGROUND

6.      In 1989, Jones was hired as a Municipal Maintenance Worker II.

7.      In 1990, he applied for the position of Municipal Maintenance Worker IV.  Three positions were available and Mr. Jones was the only black among two white males to get the positions after ranking number one in the promotional process.  After one day on the job in this new position, Jones was demoted without explanation.

8.      He filed an internal complaint, and  he was told that the demotion was due to budget cuts and the position had been frozen.  He was also told that his name would remain on the list for at least a  year and he would then be re-promoted should an opening become available.  Thereafter, within four (4) months, a white male, Frank Colette, was promoted to the same position.

9.      Jones was forced to take a lower paying job as a Municipal Maintenance Worker III after his removal from the Municipal Maintenance Worker IV position.  The duties of a Municipal Worker III are different from a level IV position and in 1991 Jones sustained an injury while carrying out his duties.  His left knee was permanently injured.

10.     In 1992, Jones applied for an employment upgrade via the City's Personnel Form 13, to the position of Municipal Maintenance Worker IV, Construction Worker or Irrigation Repairman.

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

Although Jones was qualified, his request was denied. Similarly situated white employees were granted their PD-13 request.

11. In 1992, Jones submitted several cost-saving recommendations to managers via the City's Employee Suggestion Program. This program granted employees 10% of any cost savings due to the implemented suggestion over a one (1) year period.

12. Jones suggested that the City mulch yard waste in order to reduce the number of loads being hauled to the City's trash transfer station. His supervisor advised him that his suggestion would not work and that management had declined to implement it.

13. The City subsequently implemented the program and saved nearly $300,000 over that one year period. Jones complained and it was later determined that it was indeed his suggestion.

14. The City then claimed that the the program incentive amount was capped to $1,500, and Jones was awarded $1,500 instead of the 10% incentive originally promised to City employees, which would have been $30,000.

15. Jones complained that white employees had not been subjected to the cap, at which time the City stopped the program altogether.

16. In 1992, Jones was working on a Saturday irrigating new plants, when he took a break and entered the Fiveash Water Plant to use the restroom. On the way to the restroom, he was asked by a white employee whether he worked for the City. Jones replied that he was a City employee.

17. As he departed the restroom, Jones was physically attacked by two (2) white supervisors and a white employee.

18. One of the employees defended his action because "he thought Jones was a Haitian using a City bathroom" and did not belong in the public building.

CLYNE & SELF, P.A.
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

19.     The City initiated discipline action against all four employees, including Jones, even though he was not at fault.  Jones was subject to discipline because he struggled with the three men when they attacked him.

20.     The City initiated proceedings to suspend two of the white employees involved in the attack, but decided not to implement the discipline for fear that the employees might sue the City.

21.     Black employees, such as Katrenia McCutchen, who have allegedly raised their voice to a white employee have been subject to suspensions and written reprimands.  The City did not fear that these black employees would sue them.

22.     In 1994, the City denied Jones the opportunity to apply or compete for the position of Engineering Inspector.  The reason he was given for the denial was that he lacked the requisite qualifications.  Jones was more qualified than white employees who were allowed to compete.

23.     As a result of the injury to his knee, Jones was not able to continue in the duties of a Municipal Maintenance Worker III.  He was forced to take a demotion and cut in pay and benefits to the position of Utilities Service Worker II.

24.     In 1996, after inquiring of the Personnel Department about rumored openings for the position of Engineering Inspector, Jones and another Black employee, Harold Wise, were told there were no openings.  The next day, managers walked around the office and verbally asked several white employees "if they wanted a promotion" to these positions.  These white employees were then promoted.  Thus, Jones and Wise were denied an opportunity to compete.

25.     Again in 1996, Jones was denied an upgrade, via the city's Pay Study, to the position of Utilities Service Worker IV.  The information submitted about Jones during this study clearly justified an upgrade to this position.  Jones' supervisor, Jerry Hill, agreed.  Hill provided the City

-4-

with a written recommendation and explanation justifying Jones' upgrade.  The City denied Jones' upgrade.

26.     In 1997, Jones was denied the opportunity to compete for a promotion to the position of Environmental Inspector.  His application was originally rejected supposedly due to lack of qualifications.  Jones filed a complaint and demonstrated that he met the qualifications.  The application was then accepted.  He was not allowed to participate in the actual examination process because his application was eliminated in a biased "Training and Evaluation" process, where the applications are read by managers and assigned a score.

27.     In November 1997, Jones was informed by Inspections Supervisor John Malek that there were openings for the position of Engineering Inspector.  Jones applied for the position and again his application was rejected due to lack of qualifications.  Upon filing a complaint and showing that he did meet the requisite qualifications, he and another black employee, Harold Wise, were then allowed to take the exams.

28.     Both Jones and Wise were told to bring calculators to the exam because it would consist of mathematical questions.  On the day of the exam, prior to its commencement, Jones and Wise were told the content of the exam had changed to an essay/question and answer process.  They sat for the examination.

29.     Jones and Wise were then contacted a few days later and were told that they had to take an "oral" examination.  During the oral examination, Ted Voda, a member of the panel, continually interfered with Jones' responses.  Jones was directed to give certain answers, and was repeatedly told to "hurry up."  Jones was also told to "look over here" as he tried to review the blueprints, which were being shaken and constantly moved by Mr. Voda.

-5-

30.     The City knew that Ted Voda had a bias against Jones, but nevertheless allowed him to participate in the selection process.

31.     John Malek should have been involved in the selection process, but he was purposely kept out in the field supervising a large road construction project in the Florida heat, because he was on "light duty."

32.     Ted Voda, who was uninjured, was allowed to act in John Malek's position during this time period, and worked in the air conditioned building at a desk.

33.     The rankings of the Engineering Inspector examination were released in January of 1998. Jones was ranked number 8 (eight).

34.     A few days later, Engineering Inspector, David Rose, congratulated Jones on his promotion. Jones informed him that he had not been promoted and that he was ranked eighth. Rose stated that he graded the written exams and that Jones scored the highest on the written exam.

35.     Rose informed Jones that the examination "graders" were instructed to remove and uncover the names of all of the applicants so they could see which applicant got what score. The City was aware that the examination was not graded blindly in violation of City policy.

36.     When alleged irregularities were pointed out by a white employee relating to a heavy equipment operator position where a black employee ranked number one, the City promptly threw out the test results.

37.     In March 1998, Jones complained to the Union president, Cathy Dunn, about the Engineering Inspector's exam.

-6-

38.     She later said she had reviewed the exams and concluded that Jones had failed the examination. Cathy Dunn told Jones he could be fired for falsely claiming that he had passed the exam.

39.     Jones then contacted the Union vice-president, Charles Ruffin, who told Jones he was told the same thing by the Union president, but he had not actually seen the exams himself.

40.     Jones then contacted the Personnel Department and filed a request to review his examination. His request was denied.

41.     In March 1998, Jones received a notice from the Personnel Department, which stated that his interview was not successful for the position of Code Compliance Officer. They informed him that another candidate had been selected.

42.     Jones was never interviewed by anyone for that position.

43.     The candidate selected, Burton Fletcher, a white male, was a part-time temporary employee, with less seniority than Jones.

44.     The City has a policy of providing preference to full-time employees. This preference policy was not applied to Jones.

45.     In the Spring of 1998, Jones requested that the City's Office of Managing Diversity investigate the  Engineering Inspector promotion and resolve the issue as to whether he failed the exam or passed the exam.

46.     On or about May 14,  1998, Yolanda Cowart and Wanda Del Toro, from the City's Office of Management Diversity called a meeting with Jones. Ms. Cowart and Ms. Del Toro informed Jones that their investigation confirmed that he had the highest score on the written examination, and that there appeared to be irregularities in the examination process.

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

47.     In late May of 1998 Union president, Cathy Dunn, attended a meeting with Jones, Yolanda Cowart and Wanda Del Toro.  Ms. Dunn threatened Ms. Cowart and Ms. Del Toro with her position as Union president and insisted that they had to "turn over the investigation to the union and Employee Relations."

48.     Jones objected to the circumventing of the City's policies regarding the handling of internal  complaints, and objected to the Union's interference.

49.     Ms. Dunn told Ms. Cowart and Ms. Del Toro to stop their discrimination investigations because it was making the City "look bad."

50.     Under pressure and threats, Ms. Cowart informed Jones she would have to "administratively close" the investigation and told Jones he would have to participate in the grievance process.

51.     Yolanda Cowart and Wanda Del Toro advised Jones that senior management would not let them finalize their investigation, nor were they allowed to put their findings in writing.

52.     Yolanda Cowart and Wanda Del Toro advised him that Union President, Cathy Dunn and Scott Milinski, wanted to take the investigation away from the Management Diversity Office, and were looking at ways to fire him.

53.     On or about May 22, 1998, at a meeting with the department heads in Public Services, Director Greg Kisela alerted all managers that Jones was making inquiries into the examination process. Mr. Kisela told the group that they needed to "be able to say" they had selected the best candidate.

-8-

54.     After Mr. Kisela spoke to the managers, Jones began to suffer acts of harassment and retaliation.

55.     Jones would hear from white employees that he was "a grass-cutting nigger" and that is all he would ever be.

56.     During one of the forced grievance hearings, Employment Manager Arlette Steinberger, was asked about the ranking in the Engineering Inspector's examination which showed Jones as having the top score.  Ms. Steinberger bragged that she had "destroyed it and destroyed all of the back-up data" in the computer.

57.     In June 1998, Jones met with Union president Cathy Dunn and Public Services Director Greg Kisela to purportedly discuss his discrimination complaint.  At the meeting Mr. Kisela repeatedly threatened Jones with discipline if he did not disclose information about his after hours job.  Jones denied any wrongdoing.

58.     Jones repeatedly told Mr. Kisela that his actions were retaliation for his filing a discrimination complaint.  Mr. Kisela told Jones that he "did not care."

59.     Later that same day, Mr. Kisela filed disciplinary charges against Jones and attempted to have him fired.  Jones was ordered into a disciplinary hearing the next day where he was accused of lying about having a second job.  In that meeting, Jones again expressed to Mr. Kisela that this was clear retaliation as a result of his filing a civil rights claim.  Mr. Kisela again stated "he did not care."

60.     Jones produced documentation that proved that he had received prior approval from his supervisors to work at a second job.  Jerry Hill, Jones' immediate supervisor,  confirmed this during the meeting.

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

61.    Hill repeatedly told Mr. Kisela that he was clearly retaliating against Jones and that he should end it.  Mr. Kisela repeated that "he did not care."

62.    In June 1998, Jones retrieved a note from his work vehicle windshield which read, "ENGINIGGERING INSPECTOR".  He lodged a complaint with Employee Relations Director Scott Milinski, his secretary Donna Klindt and Union president Cathy Dunn.  Jones requested an internal investigation but Milinski refused to take the note and refused to investigate the matter.

63.    Jones was directed by Greg Kisela to sign a "settlement offer" where in turn he would drop his discrimination claims against the City.  Jones was ordered to sign the offer by the close of the business day on July 3, 1998 "or else."

64.    In September of 1998, Jones was eventually promoted to the position of Engineering Inspector I, several months after the three white employees, with lower rankings were promoted to the position.

65.    All three white employees, Ralph Watts, Charles Nobles, Mark Darmanian, were unilaterally promoted to Engineering Inspector II without undergoing an examination process on June 13, 1999.

66.    The City was informed that Jones would file another complaint if he was not accorded similar treatment.  Jones was subsequently promoted to Engineering Inspector II on October 13, 1999.

67.    Harold Wise, a black employee, who did not indicate that he would file a complaint if he was not promoted to Engineering Inspector II was overlooked for promotion, and was not promoted until he filed an internal charge of discrimination and then filed charge of discrimination with the Florida Commission on Human Relations.

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

68.     On February 3, 2002, an Engineering Supervisor position became available, Jones was not eligible for this position because he did not have the requisite experience as Engineering Inspector. Jones would have had the requisite experience if he had been appropriately promoted to Engineering Supervisor at an earlier date.

69.     In early 1999, Jones was falsely accused of "spending too much time" in the City's Diversity Office where he filed his internal complaint. City managers began circulating rumors that Jones was sleeping with Yolanda Cowart and Wanda Del Toro, both staff members in that office, in order to garner their cooperation.

70. In May of 1999, 70 employees signed a petition requesting the City to address the discrimination problems and asserted that the City "used its disciplinary process to intimidate, discriminate, retaliate, and harass it's employees." The petition further accused the City of "creating and sustaining an intolerable workplace." See Petition attached hereto as Exhibit " A."

71.     The City employees' petition was sent to the following senior management officials: Bruce Larkin, Administrative Services Director; John Panoch, Personnel Director; John Dargis, Assistant Employee Relations Director; and Scott Milinski, Employee Relations Director. A copy was subsequently provided to Mayor Naugle.

72.     In the Summer of 1999, Pete Sheridan falsely accused Jones of distributing newsletters on work time and threatened disciplinary action.

73.     In January 2000, the EEOC issued a Letter of Determination with findings that Jones was discriminated against because of his race and retaliated against because he complained about the discrimination. Thereafter, the retaliation against Jones increased. See EEOC Charge of

-11-

Discrimination attached hereto as Exhibit "B";  See EEOC Letter of Determination attached hereto as Exhibit "C."

74.     Assistant City Manager Greg Kisela walked into an office where Jones was working with fellow employee, Dane Esdelle.  Mr. Kisela told Mr. Esdelle that he hurt his career by working or being seen with Jones.  Mr. Kisela stated " Jones was nothing but a trouble maker."

75.     Since filing his EEOC Charge,  his supervisor Pete Sheridan has given Jones two unwarranted counselings.

76.     In September 2000, at the annual luncheon of the Public Services Diversity Action Committee, several committee members who attended the meeting threatened to resign after they heard City Manager, Floyd Johnson, repeatedly insult Jones.

77.     A few weeks later, during or about the week of September 26, 2000, City Manager Floyd Johnson organized a series of meetings purportedly to discuss a new union contract that had been ratified.  Meetings of this type have never been arranged before in the history of the City.  During those meetings Mr. Johnson ridiculed Jones and other employees who had filed complaints of discrimination with the EEOC.  Mr. Johnson threatened to "put his foot down."

78.     In October 2000, City employees and the news media were informed that there would be a rally against Jones, Harold Wise and other employees who had filed civil rights complaints by employees who allegedly were loyal to the City.  The rally was organized by management, and employees were threatened with discipline if they did not attend.

79.     On or about January 11, 2001, Jones was at a city function, where Assistant City Manager Greg Kisela issued a death threat to him.  Mr. Kisela stated "You know I have a burial plot waiting for you."

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

80.     Jones was in fear of his life. He purchased a bullet proof vest and wore it for several months despite the 90 degree temperature and high humidity of South Florida.

81.     The City has a zero tolerance policy for threats of violence. Despite this policy, no action was taken against Kisela for several months until the issue became public.   The Broward County Sheriff's Office investigated and recommended discipline for Kisela. Kisela was eventually given a written reprimand.

82.     Black employees who make threats are sent to psychiatric counseling and are disciplined severely.

83.     Jones was subject to daily derogatory remarks about his race, African American, and his color, black.

84.     Since 2001 to the current date, Jones' supervisor, Peter Sheridan, has refused to allow him to attend official, pre-approved union functions on City time like other City employees.   When he is allowed to attend functions, his pay is fraudulently seized, his pension benefits are reduced, and his federal income taxes and social security benefits are negatively altered.

85.     City managers falsify leave request in order to dock Jones salary, when he attends union functions.

86.     The prior union steward, white, was not treated in this manner.   She was allowed to attend Union meetings without her pay being docked.

87.     Mr. Jones has continuously been denied opportunities to compete for various promotional positions.   Among these were Utilities Mechanic, Environmental Inspector, Heavy Equipment Operator, Utilities Service Worker III, Utilities Service Worker IV, Code Compliance Officer and Engineering Inspector.   This has rendered him ineligible for other promotional

-13-

opportunities that would have followed, and significantly reduced his income and retirement benefits.

88.      After a two year investigation, the United States Department of Justice determined that Jones was in fact subject to discrimination and retaliation in violation of Title VII.  A letter of determination was sent to the City on or about  April 2002.  See U.S. Department of Justice, Results of Investigation of Elgin O. Jones v. City of Fort Lauderdale, EEOC Charge No. 15A-98-0317, Attached hereto as Exhibit "D."

## COUNT I

## VIOLATION OF SECTION 1983 BY CITY

89.      Jones adopts and realleges paragraphs1 through 85 above as if incorporated herein.

90.      The City is a municipality and acted under the color of state law in violation of  42 U.S.C. § 1983.

91.      The City intentionally deprived Jones of his rights secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and by the federal laws of the United States, to be free of discrimination because of his race and color.

92.      The City has a custom and policy of barring free speech on workplace issues in violation of the 1st Amendment of the United States Constitution, and Title VII.

93.      The City's final policy-makers and senior managers knew or should have known that Jones and other minorities were being discriminated against in a systemic and continuous manner by the following:

-14-

A.   In 1996, Deborah Lamar, the City's Affirmative Action Officer/EEO Officer presented a report to senior management wherein she informed them that the City systematically was discriminating against women and minority employees;

B.   In 1996, Clifton McCree, a former black employee, shot 5 co-workers and himself and stated in his suicide note that he committed this atrocious act because of unfair and racist treatment;

C.   In July of 1999, Yolanda Cowart, City's Management Diversity Director sent a memorandum to City Manager Floyd Johnson and other senior managers regarding a pattern of retaliation against employees who filed internal or external complaints of discrimination;

D.   In 1999, 70 employees signed a petition complaining of discrimination in the workplace;

E.   Between 1999 and 2002, the United States Equal Employment Opportunity Commission issued probable cause of violations of Title VII by the City  for the following black employees: Elgin Jones, Harold Wise, Timothy St. Fleur, John Patten, Ivett Spence-Brown and Wanda Del Toro.  See Letters of Determination attached as Composite Exhibit "E";

F.   In February 2001, a jury found that the City had discriminated against Katrenia McCutchen, a former City employee,  based on her gender and race, black.  The Final Judgment in the case was for $650,000;

G.   The City Commission has met on several occasions during closed door sessions and discussed the racial discrimination complaints and settlement of cases;

H.   The United States Civil Rights Commission received so many complaints of discrimination regarding the City that they held a public forum in August 2001.  The forum was

-15-

attended by hundreds of citizens and employees, and was also attended by senior managers and City Commissioners;

I.      Employees and residents have organized 3 protests against the City's discriminatory treatment of employees, including two during City Commission meetings regarding the discriminatory workplace at the City;

J.      In April of 2002, the Department of Justice determined that Elgin Jones was subject to discrimination and retaliation in violation of Title VII;

K.   There have been numerous articles in the newspaper, television coverage, and radio coverage regarding the continuous problems of racial discrimination at the City of Ft. Lauderdale, which has been labeled the "racist City in South Florida."

94.      The City Commission and the senior management are fully aware of the discrimination and have acquiesced and supported the continuation of actions that violate the United States Constitution, and federal and state laws prohibiting discrimination.

95.      The City Commission and senior management have acquiesced and fostered discrimination at the City through the following actions:

A.      Attempting to cover-up and hide acts of discrimination;

B.      Punishing and squelching the speech of employees who complain of discrimination;

C.      Failing to take prompt corrective action;

D.      Destroying evidence of discrimination;

E.      Failing to discipline employees who harass and discriminate in the workplace, particularly when the employee is a manager;

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

F.     Litigating against employees who file charges of discrimination even when the employee has a meritorious position in an attempt to wear down employees with limited resources;

G.     Retaliating against employees who file charges of discrimination;

H.     Attempting to injure the reputations of employees who file charges by slandering the employee's reputation;

I.     Meting out discipline unfairly;

J.     Failing to promote or transfer minority employees;

K.     Inadequately supervising management employees who discriminate, harass and retaliate against women and minority employees or anyone brave enough to oppose the discriminatory practices;

L.     Failing to train employees;

M.     Failing to implement strong policies that would help end violations of Title VII;

N.     Failing to enforce the City's EEO policies;

O.     Fostering an environment where senior male managers sleep with subordinate females and then reward the female employees for their sexual favors;

P.     City Commission failed to fire City Manager for ineffective handling of the City's problems of discrimination;

Q.     City Commission failed to fire City Attorney for protecting managers who discriminated and for failing to report reasonable settlement offers.

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

96.     Jones and similarly situated members of the protected class have suffered systemic and continuous discrimination by the City, which has a custom and practice of treating African Americans, Hispanics and women employees in a discriminatory manner by failing to hire minorities and women for certain positions, by terminating the career of promising minority employees, by failing to promote minority employees,  by unfairly disciplining minority employees, by retaliating against employees who complain of acts of discrimination, by retaliating against employees who oppose discrimination, and by injuring the reputation of employees who complain or oppose unlawful acts of discrimination.

97.     The City by and through the acts of its employees, intentionally and knowingly discriminated against Jones based on his race and color by failing to promote him, by giving him unwarranted counseling's, by attempting to discipline him, by demeaning him before his peers, by permitting his co-workers and supervisors to verbally harass him, by providing him inferior terms and conditions of employment,  by denying him the privileges provided to white co-workers of similar rank, by retaliating against him, and by creating a hostile work environment.

98.     The City intentionally discriminated against Jones based on his race, and color in violation of 42 U.S.C. §§ 1983 through its custom of permitting discriminatory acts against Elgin Jones and other minorities in violation of their rights under the 14th Amendment of the United States Constitution.

99.     The City has violated 42 U.S.C. §1983 through its custom and policy of permitting employees to be subject to retaliation for opposing unlawful acts in violation of their rights under the 14th Amendment of the United States Constitution.

100.    The City through its custom and policy of discriminating against women and

-18-

minorities has:  retaliated against employees who speak out about acts of discrimination; retaliated against employees who file charges of discrimination; acquiesced to discriminatory acts against its employees; given unwarranted discipline to employees; discriminated against women and minorities by failing to promote; and has injured the reputation of minorities and women who speak out about acts of discrimination in violation of the 14th Amendment, 5th Amendment and 1st Amendment of the United States Constitution.

101.   As a direct and proximate result of the City's discriminatory acts or omissions, Jones has suffered a loss of income, loss of benefits, medical expenses, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

102.   Jones has retained counsel and has agreed to pay Clyne & Self, P.A. a reasonable fee and costs.  Jones is entitled to reasonable fees and costs as the prevailing party pursuant to 42 U.S.C. § 1988, and prays that the Court will award same if such is the case.

WHEREFORE, Jones prays that this Court will:

**One**, issue a declaratory judgment that the discrimination against Jones was a violation of Jones' rights under Section 1983;

**Two**, enjoin the City, its supervisors and employees from continuing further discriminatory practices in violation of Section 1983 against Jones or any other minority employee;

**Three**, make Jones whole by awarding lost income including back pay, front pay, reinstatement to proper seniority and position and lost benefits;

**Four**, award compensatory damages for emotional distress, mental anguish, prejudgment interest;

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

**Five**, award reasonable attorney's fees and costs; and

**Six**, provide any other relief the court deems appropriate.

### DEMAND FOR JURY TRIAL

Jones demands trial by jury as to all issues so triable.

Dated this 10th day of May, 2002.

Respectfully submitted,

CLYNE & SELF, P.A.
Counsel for Plaintiff
Douglas Centre, Suite 1100
2600 Douglas Road
Coral Gables, FL 33134
Tel. (305) 446-3244
Fax. (305) 446-3538

By: _____
Reginald J. Clyne, Esq.
Fla. Bar No. 654302

L:\9111-101\Pldg\Complaint.wpd

-20-

**CLYNE & SELF, P.A.**
Douglas Centre • 2600 Douglas Road • Suite 1100 • Coral Gables, Florida • Telephone (305) 446-3244 • Facsimile (305) 446-3538

# PLAINTIFF'S EXHIBIT "A"

DATE:        MAY 25, 1999

             MANAGING DIVERSITY OFFICE      (CITY OF FORT LAUDERDALE)

FROM:        COMPLAINANTS, EMPLOYEES OF THE CITY OF FORT LAUDERDALE

SUBJECT:     INTIMIDATION, RETALIATION, DISCRIMINATION, DISPARATE TREATMENT, AND AN INTOLERABLE
             WORKPLACE COMPLAINT

PLEASE ACCEPT THE ATTACHED FORMS WITH SIGNATURES AS A FORMAL COMPLAINT AS DETAILED ON THE FORMS.  WE ARE REQUESTING
THAT THOSE MANAGERS NAMED AS THE RESPONSIBLE PARTIES NOT BE ALLOWED TO REVIEW THE NAMES OF THE CHARGING PARTIES.  WE
FEAR MORE   RETALIATION.   WE ARE ALSO REQUESTING THAT THIS OFFICE PROCESS AND INVESTIGATE THESE CHARGES.  IN ADDITION
WE ARE REQUESTING AN INITIAL 'GROUP' MEETING WITH THE CITY MANAGER TO AIR OUR CONCERNS.  WE ARE ALSO REQUESTING, OUT
OF FEAR, THAT ALL NOTICES OF INTERVIEWS BE SENT FROM THE CITY MANAGER'S OFFICE AND NOT YOUR OFFICES.  THIS`IS BECAUSE
ANY NOTICES FROM YOUR OFFICES WILL SEND A SIGNAL TO OUR IMMEDIATE SUPERVISORS THAT WE HAVE EXERCISED OUR RIGHTS UNDER
THE LAW.


WE HAVE BEEN CRYING OUT FOR RELEIF FOR QUITE SOMETIME NOW, HOWEVER, OUR CRIES HAVE BEEN MET WITH CASUAL DENIALS.  WE
FULLY UNDERSTAND THAT THE CITY HAS A RIGHT AND AN OBLIGATION TO POLICE IT'S WORKPLACE,  BUT THERE SHOULD BE EQUITY
AND CONSISTENCY IN THIS PROCESS.  OURSELVES AND MANY OTHER EMPLOYEES WHO REMAIN SILENT OUT OF FEAR, ARE TIRED OF
WORKING UNDER THREAT.   WE ARE TURNING TO YOUR OFFICE TO INVESTIGATE THIS AND TO PROVIDE RELIEF AND REMEDY.  WE
TRUST YOUR OFFICE WILL DO A THOROUGH JOB.

# EXHIBIT "A"

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.   THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES, WE ARE NAMING THE FOLLOWING AT THIS TIME:   BRUCE LARKINS; ADMINISTRATIVE SERVICE DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR,.   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
| --- | --- | --- |
| Bonnie Handsborough | Benk Hen  4-18-99 | Parks & Rec. |
| Joseph Ryan | Joey Ryan  05 28-99 | Park Rec. |
| Jerome Montgomery | Jerome Montgomery 5-18-99 | Park & Rec |
| DWIGHT C. LEWIS | Dwight C. Lewis 5-18-99 | PARK + Rec. |
| Deborah E. Jackson | Deborah E. Jackson 5-18-99 | Park + Rec. |
| CHARODERT FLEURIMA | Clarobert Fleurima | PARK Rec |
| Shey, Gary | Shey 5-18-99 | PARK Rec |
| Phil Hughe | Phil Hughu | PARK Rec |
| Larry Potts | Larry Potts | Park Rec |

*   JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

VESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

:, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S
SCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS
'S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE
D SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE
TY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL
PLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE
ESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE
ARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE
R THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL,STATE, AND LOCAL STATUTES, W
E NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICE
RECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE
LATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND
MEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT
IS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT,
SPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS
RRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
|---|---|---|
| Howard Lucas | Howard Lucas | Public Services |
| Henr Georgis | Al Georgia | Public Service |
| Marcus Hodge | Marcus Hodge | Public services |
| Jamse Hinton | James Hinton | Public services |
| Eddie Rosado | Eddie Rosado | Public Services |
| Ed Sawyer | Ed Sawyer | Public Services |
| Fischer, Fab | Fische | Public services |
| Buller 5 | 5.21.99 | |
| David Dunlap | David Dunlap | Public services |
| bert Katzmark | Albert | Public services |

* JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES, W ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICE DIRECTOR,  JOHN PANOCH; PERSONNEL DIRECTOR,  SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
| --- | --- | --- |
| Keith Hutchison | _(signature)_ | PBS |
| Carlton Greate | Carlton Greate | PBS |
| Kevin L. Aaron | Kevin L. Aaron | PBS |
| Armando Kale | Armando Kale | PBS |
| Eddie McDuffie | Eddie W. McDuffie | PBS |
| Eben Lawrence | Eben Lawrence | PBS |
| David Engram | David Engram | PBS |
| Ethelbert K. Brown | Ethelbert K. Brown | PBS. |
| Henry Mackey | Henry Mackey | PBS |

JOHN DARGIS IS THE ASST EMPLYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL,STATE, AND LOCAL STATUTES, ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICE DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
| --- | --- | --- |
| Danny T. Cull | Danny T. Cull  5-19-99 | Parks & Rec |
| Bobby Williams | Bobby Williams  5-17-99 | Park Rec |
| Travis Sangster | Travis Sangster  5-19-99 | Park/Rec |
| Junior Coleman | _(signature)_  5/19/99 | Parks/Rec |
| Ramnarace Saitah | _(signature)_  5-19-99 | Park/Rec |
| Ted Bell | Ted Bell | Util. |
| John E. Gambler | John E. Gambler | Util. |
| Tyrone Lewis | Tyrone Lewis | Parking |
| Allen Oliphant | Allen Oliphant | Parking |

*  JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HAND THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THES CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIB FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES, ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVI DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
| --- | --- | --- |
| Terry Johnson | Terry Johnson 5/18/99 | Parks & Recreation |
| Mario Sorto | [signature] 5/18/99 | Park C.R |
| Venisier St. Louis | Venisier 5/19/99 | Park & Rec |
| Roger Dykes | Roger Dykes | Parc & Rec |
| Wisly Eliosen | Wisly Eliosen 5-18-99 | Park & Rc |
| Kenny Brown | Kenny Brown 5-19-99 | Park |
| Keith Wilkerson | Keith Wilkerson | Park & Rec |
| Tony Clark Sr. | Tony Clark Sr. | Park & Rec |
| Timothy St. Fleur | Timothy St. [signature] | Park & Rec. |

*   JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S
DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS
IT'S EMPLOYEES.   THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE
AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE
CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL
EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDL
THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE
CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBL
FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES,
ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVIC
DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE
RELATIONS DIRECTOR.   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND
NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT
THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT,
DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS
CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
|---|---|---|
| DONNA M. McGARRY | Donna M. McGarry | PARKING |
| Don Fuller | Don Fuller | Pub. WKS. |
| STEVE STRAND | Steve A Strand | Engineering |
| Johnnie Rios | Johnnie Rios | B82 |
| Brian Kearney | Brian Kearney | Park & Rec |
| Harry G Breedlove | Harry W Breedlove | PRK & Rec |
| EARL Bacon | Earl Bacon | Park & Rec |
| Jermale Prince | Jermale Prince | PBS |
| Robert L Moorland | Robert L Moorland | PBS |

*   JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

/ESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S
SCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS
S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE
o SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE
TY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL
PLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLES
ESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE
ARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE
R THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL,STATE, AND LOCAL STATUTES, WE
E NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICES
RECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE
LATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND
MEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT
IS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT,
SPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS
RRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
|---|---|---|
| ?ERVILLE HOLNESS | L. Holmes | Public Service   Environmental Lab |
| ENEZ SCRIVEN | Inez Scriven | Public Service |
| ?nthony Davis | Anthony Dav | Public Service |
| Darell Bowen | D. Bowen | Public Service |
| John Patten | John Patten 5/22/99 | Public service |
| Andrew J. Price | Andrew J. Price | Parks & Rec |
| ?E Jauquo Rocra | ? 5-22-99 | Utility Servic |
| Wayne Gaines | Wayne Gaines 5-22-99 | Public Services |
| ?nneth Smith | Kenneth Smith 5-24-99 | Public Services |

* JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES, WE ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICE DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR.   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
|---|---|---|
| William Dickey | William Dickey | Mtr Shop |
| Andre' D. Cross | Andre' D. Cross | MTR. SHOP |
| Billy R Bve | Billy R B | Meter Shop |
| Clarence Rutledge | Clarence Rutledge | Meter Shop |
| Timothy Sims | Timothy Sims - 5-25-99 | Meter Shop |
| Roosevelt Butler | Roosevelt Butler | Meter shop |

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.   THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES, WE ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICE DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,    SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR.   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
|---|---|---|
| ELGIN JONES | EGC   5-18-99 | PBS-ENGINEERING |
| Clive Lazarus | 5/18/99 | PBS - Retired |
| Emanuel Mackey | Emanuel Mackey 5/18/99 | PBS - Sanatation |
| | | |
| | | |
| | | |
| | | |
| | | |

*   JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

INVESTIGATION REQUEST:   CITY OF FT. LAUDERDALE'S DISCIPLINARY PROCESS

WE, THE UNDERSIGNED, CHARGE THAT THE CITY OF FT. LAUDERDALE HAS USED IT'S DISCIPLINARY PROCESS TO INTIMIDATE, DISCRIMINATE, RETALIATE, AND HARASS IT'S EMPLOYEES.  THE CITY HAS ALSO USED IT'S DISCIPLINARY PROCESS TO CREATE AND SUSTAIN AN INTOLERABLE WORKPLACE.  WE ARE FILING THESE CHARGES WITH THE CITY'S MANAGING DIVERSITY OFFICE.   IT IS OUR UNDERSTANDING THAT THE EQUAL EMPLOYMENT AND OPPORTUNITY COMMISSION HAS A "PAST PRACTICES TEAM" THAT HANDLE THESE TYPES OF CLAIMS.   WE ARE REQUESTING A COMPLETE INVESTIGATION OF THESE CHARGES.   WHILE THERE ARE NUMEROUS MANAGEMENT OFFICIALS THAT ARE RESPONSIBLE FOR THESE VIOLATIONS OF OUR RIGHTS UNDER FEDERAL, STATE, AND LOCAL STATUTES, WE ARE NAMING THE FOLLOWING AT THIS TIME:  BRUCE LARKINS; ADMINISTRATIVE SERVICE DIRECTOR,   JOHN PANOCH; PERSONNEL DIRECTOR,   SCOTT MILINSKI; EMPLOYEE RELATIONS DIRECTOR,   JOHN PANOCH; ASST EMPLOYEE RELATIONS DIRECTOR,   AND NUMEROUS OTHER MANAGERS THAT WILL BE NAMED AT A LATER DATE.   PLEASE ACCEPT THIS FORM AS A FORMAL CHARGE OF DISCRIMINATION, RETALIATION, HARASSMENT, DISPARATE TREATMENT, AND AN INTOLERABLE WORKPLACE.   THIS COMPLAINT COVERS CURRENT AND FORMER EMPLOYEES.

| PRINT NAME | SIGNATURE & DATE | DEPARTMENT |
|---|---|---|
| Anthony Cain | *(signature)* | PBS |
| Dycel Davis | *(signature)* | PBS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

* JOHN DARGIS IS THE ASST EMPLOYEE RELATIONS DIRECTOR, NOT JOHN PANOCH

# PLAINTIFF'S EXHIBIT "B"

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☒ FEPA | EM-267-6-98 |
| | ☒ EEOC | 15A980317 |

Broward County Human Rights Division _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Elgin O. Jones | (954) 428-5357 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1031 S. W. 11 Court, Deerfield Beach, FL 33441 | | 09/16/62 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| City Of Fort Lauderdale | 501+ Employees | (954) 761-5300 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 200 N. Andrews Avenue, Fort Lauderdale, FL 33302 | | 011 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | EARLIEST 03/01/98   LATEST 03/01/98 |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

1. On 3/01/98, I was denied a promotion to the position of Code Enforcement Officer by the Respondent.  In January, 1998, I was denied promotion to the Engineering Inspector.  After filing an EEO complaint I was subjected to harassment.

   I am Black.

2. No reason was given by the Respondent.

3. I believe that I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, Section 704a, the Florida Civil Rights Act (Chapter 760) and Article II, Section 1(a)(1) of the Broward County Human Rights Act.

A.L.#5520-200-62-336-0

| ☒ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.  x *[signature]* | SIGNATURE OF COMPLAINANT  x *[signature]* |
| Date 5/12/98   Charging Party *(signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)  22/5/98 |

EEOC FORM 5 (Rev. 06/92)

*[Notary stamp: JOYCE D. BROWN, MY COMMISSION # CC 540360, EXPIRES APR 25, 2000, BONDED THRU ATLANTIC BONDING CO., INC.]*

EXHIBIT "B"

# PLAINTIFF'S EXHIBIT "C"



# UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Miami District Office

One Biscayne Tower
Two South Biscayne Boulevard, Suite 2700
Miami, Florida 33131-1805
Phone: (305) 536-4491
TDD: (305) 536-5721
FAX: (305) 536-4011

EEOC Charge Number: 15A 98 0317

**Mr. Elgin O. Jones**                         **Charging Party**
1031 Southwest 11 Court
Deerfield Beach, Florida 33441

**City of Fort Lauderdale, Florida**           **Respondent**
c/o Mr. John A. Walker, Esquire
Muller, Mintz, Kornreich, Caldwell,
Casey, Crosland & Bramnick, P.A.
First Union Financial Center, Suite 3600
200 South Biscayne Boulevard
Miami, Florida 33131-2338

## LETTER OF DETERMINATION

I issue the following determination based on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and timeliness, deferral and all other requirements for coverage have been met.

Charging Party alleged that he was discriminated against in violation of Title VII in that he was denied promotion to Engineering Inspector I because of his race, Black, and retaliated against when he filed an internal complaint because of his non-selection.

Examination of the evidence of record demonstrates that Charging Party was discriminated against because of his race and retaliated against because he complained about the discrimination. I have determined that the evidence obtained during the investigation establishes that there is reasonable cause to believe that a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission Regulations apply to information obtained during the conciliation process.



EXHIBIT "C"

*Letter of Determination*
**Elgin O. Jones v. City of Fort Lauderdale**, Florida
EEOC Charge Number: 15A 98 0317
Page Two

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

JAN 19 2000
Date

Federico Costales
District Director

Enclosure: Invitation to Conciliate

cc:     Mr. Elgin O. Jones
        c/o Mr. Reginald J. Clyne, Esquire
        Simmons and Clyne, P.A.
        Douglas Centre - Penthouse Two
        2600 Douglas Road
        Coral Gables, Florida 33134

# PLAINTIFF'S EXHIBIT "D"



**U.S. Department of Justice**

Civil Rights Division

WBF:MM:CAB:CC:sj
DJ 170-18-135

*Employment Litigation Section*
*P.O. Box 65968*
*Washington, DC 20035-5968*
*www.usdoj.gov/crt/emp/emphome.html*

APR   8 2000

<u>Via U.S. Mail</u>

Ms. Barbara McCarthy
Assistant City Attorney
City of Fort Lauderdale
P.O. Drawer 14250
Fort Lauderdale, Florida  33302

Re:    Results of Investigation of Elgin O. Jones v.
        <u>City of Fort Lauderdale, EEOC Charge No. 15A-98-0317</u>

Dear Ms. McCarthy:

    This letter is to inform you of the results of our investigation of the above-referenced charge filed by Elgin O. Jones against the City of Fort Lauderdale, Florida ("the City"). Based on the information provided to us by the Equal Employment Opportunity Commission ("EEOC") and compiled by us since this matter's referral, we have determined that the City discriminated against Mr. Jones on the basis of his race by denying him promotion to the position of Engineering Inspector I in 1998. We also have determined that Mr. Jones was subjected to a hostile work environment as a result of his opposition to practices he reasonably believed were discriminatory and because he complained of discrimination. These actions violated Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-2(a), and Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a). These determinations are based, in part, on the following considerations:

1.    In October 1997, Mr. Jones applied for the position of Engineering Inspector I. At that time, he met the City's minimum qualifications for the position. Three Engineering Inspector I positions were then available.

2.    The City administered two competitive exams for the Engineering Inspector I position in 1997, one written and one oral. Before the exams were administered, the City determined that examinees would be ranked on an eligibility list based on their total scores, which combined the written and oral exam grades. The City would fill its Engineering Inspector I vacancies only from those ranked in the top five positions on the eligibility list.



EXHIBIT "D"

3.  The City administered the written test for Engineering Inspector I on November 24, 1997, and the exams were graded shortly thereafter. Mr. Jones received the highest score on the written exam.

4.  The oral exam was administered on or about November 25, 1997. Members of the oral exam rating panel were permitted to review examinees' scores on the written test before determining how to rate examinees' answers on the oral exam. The City's Personnel Analyst conceded that the score of one white applicant "on the technical dimension [of the oral exam] came out higher than Elgin Jones', even though they pretty much got the same number of technical questions correct," and that one of the oral exam raters "may have been trying to increase [the white candidate's] chances for success." Memorandum from Sharon Leibowitz to Employment Manager Arlette Steinberger and Personnel Director John Panoch re: Response to Engineering Inspector I Charges (May 12, 1998) at 4, 5.

5.  Despite receiving the highest score on the written exam, Mr. Jones was ranked in last place on the City's list of candidates eligible for promotion ("eligibility list"). The City admits that Mr. Jones ranked last on the eligibility list because the written exam results were never included in examinees' total scores, contrary to the City's original scoring plan. The City selected two white males and a Latino male to fill its available Engineering Inspector I vacancies.

6.  In early 1998, Mr. Jones filed a grievance with his union challenging the accuracy of the Engineering Inspector I promotional scores. On or about March 10, 1998, Mr. Jones also filed an internal complaint of racial discrimination with the City's Equal Employment Opportunity ("EEO") Office. After challenging his non-promotion, Mr. Jones suffered harassment from co-workers and supervisors in retaliation for alleging that the City's decision not to promote him was based on his race.

7.  After the Director of the City's EEO office raised questions about the Engineering Inspector I exam scoring process, the City's Employment Manager, Arlette Steinberger, rescored the Engineering Inspector I exam. In re-calculating the exam scores, Ms. Steinberger created various draft eligibility lists, which showed how the candidates' ranks changed depending on the use of various weights assigned to the test components (i.e., the written technical exam and the respective components of the oral exam). One of these draft lists showed Mr. Jones ranked in first place. The City admits that it later destroyed the physical and electronic files documenting these calculations, including the draft eligibility list showing Mr. Jones in first place.

8.  In approximately May 1998, the City issued a new eligibility list, which weighted the written and oral exam components differently than under the City's original scoring plan. This new eligibility list showed Mr. Jones tied for second place. The City declined to promote Mr. Jones at that time.

9.   On or about May 22, 1998, Mr. Jones filed a charge of discrimination with the EEOC, Charge No. 15A-98-0317.

10.  Six days later, on or about May 28, 1998, Assistant City Administrator Gregory Kisela opened an investigation of Mr. Jones' off duty employment, although Mr. Jones' supervisors had granted him permission to engage in such employment several months earlier.

11.  In or about June 1998, Mr. Jones found a note on his City vehicle stating "Enginiggering Inspector." Mr. Jones informed Employee Relations Director Scott Milinksi and the City's EEO Director of the note. Mr. Jones also reported to the EEO Office that, beginning soon after he challenged the Engineering Inspector I exam, in or about February 1998, his coworkers and supervisors began harassing him because he had complained of discrimination.

The evidence clearly establishes that the City discriminated against Mr. Jones by refusing to promote him based on his race. See McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973). The evidence also shows that the City retaliated against Mr. Jones by subjecting him to harassment because he opposed practices he reasonably believed were discriminatory and because he complained of discrimination. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998).

Title VII of the Civil Rights Act of 1964, as amended, provides that when the Attorney General believes that a state or local government employer has discriminated in violation of the Act, he may apply to the appropriate court for an order that will ensure compliance with Title VII and remedy the effects of past discrimination. Accordingly, a lawsuit has been authorized for filing against the City to obtain such an order.

In order to avoid the burdens of contested litigation, we invite the City to enter into a consent decree incorporating the kind of corrective measures we believe are necessary to comply with federal law. The measures that we believe should be undertaken include the following:

1.   The City should offer Mr. Jones appropriate make-whole remedial relief and compensatory damages, as provided for in Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.   The City should take appropriate measures to ensure that, in the future, its employees are not subjected to harassment because they have filed a complaint of discrimination. These measures include, but are not limited to, adoption of a clear, meaningful, and widely publicized written policy prohibiting retaliatory harassment against any City employee.

3.   The City should take steps to ensure that its competitive exams cannot be manipulated for discriminatory purposes.

3

4.    The City should take other appropriate non-discriminatory measures to overcome the effects of the discriminatory practices.

Within the next fourteen (14) days, Charlotte Burrows, the attorney to whom this matter is assigned, will contact you to determine whether the City wishes to enter into a consent decree embodying the elements of relief described above.

Where direct negotiations between the Department, through its assigned attorney or attorneys, and a respondent are unsuccessful or where the Department attorney believes alternative dispute resolution ("ADR") could be a useful supplement to direct negotiations, it is the standard practice of the Department to consider the use of ADR in appropriate cases. The Department of Justice is committed to the broader use of ADR to lead to the more effective, efficient, and cost-saving resolution of disputes involving the government. If at any time the City believes that entering into an ADR process may be appropriate and/or beneficial for purposes of negotiating the terms of a consent decree to be filed with the court, please feel free to raise this possibility with Ms. Burrows. Likewise, if the Department of Justice believes at any time that the ADR process may be appropriate and/or beneficial, the Departmental attorney will raise this prospect with the City.

If you have any questions about this matter, please feel free to contact Ms. Burrows at (202) 514-3862.

Sincerely,

Ralph F. Boyd, Jr.
Assistant Attorney General
Civil Rights Division

By:               William B. Fenton

William B. Fenton
Acting Chief, Employment Litigation Section
Civil Rights Division

cc:   Guy Lewis, Esq.,
U.S. Attorney for the Southern District of Florida

      Veronica Harrell-James, Esq.,
Civil Rights Section
Office of the U.S. Attorney for the Southern District of Florida

4

# PLAINTIFF'S EXHIBIT "E"



# UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Miami District Office

One Biscayne Tower
Two South Biscayne Boulevard, Suite 2700
Miami, Florida 33131-1805
Phone: (305) 536-4491
TDD: (305) 536-5721
FAX: (305) 536-4011

EEOC Charge Number: 15A 98 0317

**Mr. Elgin O. Jones**                         **Charging Party**
1031 Southwest 11 Court
Deerfield Beach, Florida 33441


**City of Fort Lauderdale, Florida**           **Respondent**
c/o Mr. John A. Walker, Esquire
Muller, Mintz, Kornreich, Caldwell,
Casey, Crosland & Bramnick, P.A.
First Union Financial Center, Suite 3600
200 South Biscayne Boulevard
Miami, Florida 33131-2338

## LETTER OF DETERMINATION

I issue the following determination based on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and timeliness, deferral and all other requirements for coverage have been met.

Charging Party alleged that he was discriminated against in violation of Title VII in that he was denied promotion to Engineering Inspector I because of his race, Black, and retaliated against when he filed an internal complaint because of his non-selection.

Examination of the evidence of record demonstrates that Charging Party was discriminated against because of his race and retaliated against because he complained about the discrimination. I have determined that the evidence obtained during the investigation establishes that there is reasonable cause to believe that a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission Regulations apply to information obtained during the conciliation process.

# EXHIBIT "E"

*Letter of Determination*

**Elgin O. Jones v. City of Fort Lauderdale, Florida**
EEOC Charge Number: 15A 98 0317
Page Two

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

JAN 19 2000
Date

Federico Costales
District Director

Enclosure: Invitation to Conciliate

cc:     Mr. Elgin O. Jones
        c/o Mr. Reginald J. Clyne, Esquire
        Simmons and Clyne, P.A.
        Douglas Centre - Penthouse Two
        2600 Douglas Road
        Coral Gables, Florida 33134



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, FL 33131
PH: (305) 536-4491
TDD: (305) 536-5721
FAX: (305) 536-4011

EEOC Charge No.: **15A 97 0420**

Timothy St. Fleur                              Charging Party
720 N.W. Second Avenue, #3
Ft. Lauderdale, FL 33311

City of Ft. Lauderdale                         Respondent
100 North Andrews Avenue
Ft. Lauderdale, FL 33302

## LETTER OF DETERMINATION

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the
Civil Rights Act of 1964, as amended, and timeliness, deferral,
and all other requirements for coverage have been met.

Charging Party alleged that he was discriminated against because
of his Race, Black, and his National Origin, Haitian, in
violation of Title VII in that he was harassed with racially
derogatory names and denied promotional opportunities.

Examination of the evidence indicates the Charging Party was
subjected to a racially hostile environment and to adverse
retaliatory actions because of his race, Black, and National
Origin, Haitian.

Further, the evidence shows the Charging Party was denied a
promotion because of his National Origin, Haitian, and Race,
Black. Therefore, I have determined that the evidence obtained
during the investigation establishes that there is reasonable
cause to believe that a violation of the statute has occurred.



pg. 2

EEOC No. **15A 97 0420**

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

_03/24/00_
Date

Federico Costales
District Director

Enclosure: Invitation to Conciliate

cc:  parties' attorneys/representatives

Gordon D. Rogers, Attorney
Muller, Mintz
Suite 3600
200 S. Biscayne Blvd.
Miami, FL 333131-2338

Reginald J. Clyne
Simmons & Clyne
2600 Douglas Road
Coral Gables, FL 33134



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
### Miami District Office

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721

FAX (305) 536-4011

EEOC Charge No.: **15A 97 0423**

John R. Patten                         Charging Party
5666 Blueberry Ct.
Lauderhill, FL 33313


City of Ft. Lauderdale                 Respondent
100 North Andrews Avenue
Ft. Lauderdale, FL 33302


### LETTER OF DETERMINATION


I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil
Rights Act of 1964, as amended, and timeliness, deferral, and all
other requirements for coverage have been met.


Charging Party alleged that he was discriminated against because of
his Race, Black, in violation of Title VII in that he was disciplined
for tardiness, denied overtime, denied training and denied promotions.


Based upon its investigation, the EEOC is unable to conclude that the
information obtained establishes a violation of Title VII of the 1964
Civil Rights Act, as amended, in regard to discipline and denial of
overtime.


However, examination of the evidence indicates the Charging Party was
denied training at the Short School Seminar and, consequentially,
promotional opportunities to the position of Operator I because of his
race, Black.



pg. 2

EEOC No. **15A 97 0423**

Therefore, I have determined that the evidence obtained during the investigation establishes that there is reasonable cause to believe that a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission  Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.  A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

03|24|00

_____              _____
Date                                  Federico Costales
                                      District Director

Enclosure: Invitation to Conciliate

cc:  parties' attorneys/representatives

Gordon D. Rogers, Attorney
Muller, Mintz
Suite 3600
200 S. Biscayne Blvd.
Miami, FL 333131-2338

Reginald J. Clyne
Simmons & Clyne
2600 Douglas Road
Coral Gables, FL 33134

GU0002



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd, Suite 2700
Miami FL, 33131
(305) 536-4491
TTY (305) 536-5721
FAX (305) 536-4011

EEOC Charge No.: **15A 97 0141**

Ivett L. Spence                                       Charging Party
2920 N.W. Seventh Court
Ft. Lauderdale, FL 33311

City of Ft. Lauderdale                               Respondent
100 North Andrews Avenue
Ft. Lauderdale, FL 33302

## LETTER OF DETERMINATION

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and timeliness, deferral, and all other requirements for coverage have been met.

Charging Party alleged that she was discriminated against because of her Race, Black, her National Origin, Jamaican, and her Gender, female, in violation of Title VII in that she was harassed with disciplinary actions.

Examination of the evidence indicates the Charging Party was harassed with disciplinary actions because of her race, Black, her National Origin, Jamaican, and her gender, female.

Therefore, I have determined that the evidence obtained during the investigation establishes that there is reasonable cause to believe that a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission Regulations apply to information obtained during conciliation.



pg. 2

EEOC No. **15A 97 0141**

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.   A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

MAR 0 9 2000

Date

Federico Costales
District Director

Enclosure: Invitation to Conciliate

cc:  parties' attorneys/representatives

Gordon D. Rogers, Attorney
Muller, Mintz
Suite 3600
200 S. Biscayne Blvd.
Miami, FL 333131-2338

Reginald J. Clyne
Simmons & Clyne
2600 Douglas Road
Coral Gables, FL 33134



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Tampa Area Office**

501 East Polk Street, Room 1020
Tampa, FL 33602
(813) 228-2310
TTY (813) 228-2003
FAX (813) 228-284

EEOC Charge No:  150A10266
Wanda Del Toro  vs. City of Fort Lauderdale, Florida

Ms. Wanda Del Toro
c/o Reginald J. Clyne, Esquire
Clyne & Self P. A.
2600 Douglas Road, Suite 1100
Coral Gables, Florida   33134

Charging Party

City of Fort Lauderdale, Florida
c/o Ms. Dionne E,. Wong, Esquire
Greengerb Traurig, P. A.
515 East Las Olas Boulevard
Post Office Box 14036
Fort Lauderdale, Florida

Respondent

<u>LETTER OF DETERMINATION</u>

On behalf of the Commission I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and timeliness, deferral and all other requirements for coverage have been met.

Charging Party alleged that she was discriminated against in violation of Title VII in that she was retaliated against by Respondent through intimidation and harassment because of her assertive approach in her capacity of diversity assistant to eliminate discrimination at Respondent's work places.  Charging Party further claims that Respondent retaliated against her, in part, by denying her full time employment causing her to not have the fringe benefits afforded this employment status by Respondent.  She asserts the absence of these benefits caused her to be constructively discharged.

Examination of the evidence in the file indicates that Charging Party has experienced retaliatory discrimination through intimidation and harassment as alleged and therefore establishes that there is reasonable cause to believe that a violation of the statute has occurred.  There is no reasonable cause to believe Charging Party was discriminated against

Charge No. 150A10266
Page No. 2

by Respondent with respect to the other issues alleged.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. Please complete the enclosed "Invitation to Participate in Settlement Discussion" (EEOC Form 153) and return it to the Commission at the above address no late than 10 days from the date of this correspondence. Alternatively, you may transmit a copy of the completed form by facsimile to (813) 228-2841 to the attention of Katie B. Garnett, Investigator. Failure to reply by this date will indicate that you are not interested in conciliating this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

On Behalf of the Commission:

4/18/02
Date

Manuel Zurita
Area Director

Enclosure: Invitation to Participate in Settlement Discussions (EEOC Form 153)



**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
Two South Biscayne Boulevard, Suite 2700
Miami, Florida 33131-1805
Phone: (305) 536-4491
TDD: (305) 536-5721
FAX: (305) 536-4011

EEOC Charge Number: 15A 98 0360

**Mr. Harold Wise**                                    **Charging Party**
441 East Evanston Circle
Fort Lauderdale, Florida 33312

**City of Ft. Lauderdale, Florida**                   **Respondent**
c/o Mr. John A. Walker, Esquire
Muller, Mintz, Kornreich, Caldwell,
Casey, Crosland & Bramnick, P.A.
First Union Financial Center, Suite 3600
200 South Biscayne Boulevard
Miami, Florida 33131-2338

## LETTER OF DETERMINATION

I issue the following determination based on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Title VII), and timeliness, deferral and all other requirements for coverage have been met.

Charging Party alleged that he was discriminated against in violation of Title VII in that he was denied promotion to Engineering Inspector I because of his race, Black.

Examination of the evidence of record demonstrates that the Charging Party was discriminated against because of his race. I have determined that the evidence obtained during the investigation establishes that there is reasonable cause to believe that a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and the Commission Regulations apply to information obtained during the conciliation process.

**Letter of Determination**
Harold Wise v. City of Fort Lauderdale, Florida
EEOC Charge Number: 15A 98 0360
Page Two

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

JAN 19 2000
Date

Federico Costales
District Director

Enclosure: Invitation to Conciliate

cc:      Mr. Harold Wise
         c/o Ms. Ann B. Bradshaw, Esquire
         Executive Place, Suite 101
         2455 Hollywood Boulevard
         Hollywood, Florida 33020

# CIVIL COVER SHEET

## 02 - 60652

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet.

**I (a) PLAINTIFFS:** ELGIN O. JONES

**DEFENDANTS:** CITY OF FORT LAUDERDALE, a municipality.

CIV-GRA

**(b)** COUNTY OF RESIDENCE OF THE FIRST LISTED PLAINTIFF   Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

Broward 02-60652 CV DLG

COUNTY OF RESIDENCE OF THE FIRST LISTED DEFENDANT   Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
REGINALD J. CLYNE, ESQUIRE
CLYNE & SELF, P.A.
2600 DOUGLAS ROAD, SUITE 1100
CORAL GABLES, FLORIDA 33134
TEL: (305) 446-3244

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Nation | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTE UNLESS DIVERSITY.)

Civil Rights Act of 1871, 42 U.S.C. §1983

IVa   5   days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment Of Veteran's Benefits | ☐ 350 Motor Vehicle | B ☐ 371 Truth in Lending | ☐ 690 Other | B SOCIAL SECURITY | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | A LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | B ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | A FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| B ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | B ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff Or Defendant) | ☐ 950 Constitutionality of other State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party | *☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & other | | | * A or B |
| ☐ 290 All other Real Property | | ☐ 550 Civil Rights | | | |
| | | * A or B | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Refiled
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Judge from Magistrate Judge
Appeal to District

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY

JUDGE

DOCKET NUMBER

DATE   5/10/02

SIGNATURE OF ATTORNEY OF RECORD   Reginald J. Clyne

UNITED STATES DISTRICT COURT
S/F I-2
Rev. 6/90 facsimile

FOR OFFICE USE ONLY:
Receipt No. 86265   Amount $150.00

Date Paid:   Mifp:

05/10/02